NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241222-U

NO. 4-24-1222

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 28, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* D.P, a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Warren County |
|      Petitioner-Appellee, | ) | No. 18JA17 |
|      v. | ) | |
| Sarah B., | ) | |
|      Respondent-Appellant). | ) | Honorable |
| | ) | James Standard, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court's best interest determination
          was not against the manifest weight of the evidence.

¶ 2    In March 2024, the State filed a petition to terminate the parental rights of

respondent, Sarah B., to her minor child, D.P. (born September 2016). Following the fitness and

best interest hearings, the trial court granted the State's petition and terminated respondent's

parental rights. On appeal, respondent argues the court erred when it did not permit her to testify

about her mental health treatment at the best interest hearing. We affirm.

¶ 3               I. BACKGROUND

¶ 4    In October 2018, the State filed a petition for adjudication of wardship for the minor

pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b)

(West 2018)), contending the minor's environment was injurious to his welfare. The petition

alleged respondent had possessed methamphetamine in close proximity to the minor and had used methamphetamine while responsible for the minor's care. The State subsequently filed a petition for temporary custody, and a shelter care hearing was held. At the hearing, the trial court found respondent had been arrested twice for methamphetamine possession and was incarcerated in the Henderson County jail. The court granted the State's petition and placed the minor in the temporary custody of the Illinois Department of Children and Family Services (DCFS).

¶ 5    In March 2019, following a hearing, the trial court entered an adjudicatory order finding the minor was abused or neglected. In May 2019, the court entered a dispositional order making the minor a ward of the court after finding respondent unfit for reasons other than financial circumstances to properly care for the minor.

¶ 6    In March 2024, the State filed a supplemental petition to terminate respondent's parental rights. The petition alleged respondent had failed to (1) show a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2022)), (2) make reasonable efforts to correct the conditions that were the basis for the removal of the minor from respondent's care (*id.* § 1(D)(m)(i)), and (3) make reasonable progress toward the return of the minor to respondent's care (*id.* § 1(D)(m)(ii)). The relevant nine-month period was defined as July 21, 2021, to April 21, 2022.

¶ 7                              A. Fitness Hearing

¶ 8    On April 22, 2024, the trial court held a hearing on the State's petition to terminate respondent's parental rights. Respondent was not present, and her counsel requested a continuance. Counsel indicated respondent had called two weeks prior, informing his office that she was in inpatient drug treatment. Counsel did not know what facility she was being treated at or how long the inpatient treatment would last. The State proffered respondent last spoke with her caseworker

on April 16, 2024, and did not indicate she had been or was planning to enter inpatient drug treatment. The guardian *ad litem* (GAL) stated he reviewed the Judici website prior to his arrival and found respondent had no pending cases in nearby Knox County since 2019. Additionally, he contended the matter should proceed because any inpatient treatment would be voluntary, respondent had been aware of the fitness hearing date, and the minor had been in protective care "for over 2,000 days." The State reviewed the Judici website and noted respondent had pending traffic matters in both Warren and Henderson Counties, with no court-ordered drug treatment. The hearing proceeded.

¶ 9        Tara Wilder testified on behalf of the State. Wilder was the caseworker for respondent in 2021. Respondent was required to cooperate with DCFS, complete a mental health assessment and recommended treatment, remain employed, complete a substance abuse assessment and recommended treatment, and submit to drug testing. Respondent communicated regularly with her caseworker. She completed a mental health assessment and was not recommended for any further treatment. She satisfied her employment obligation. Respondent completed the substance abuse assessment and recommended treatment. Respondent missed eight drug screenings. She tested positive for methamphetamine on one occasion. Wilder learned from respondent's parole officer she had not completed any drug testing as part of her parole requirements. On cross-examination, Wilder confirmed respondent had been compliant with all her court-ordered requirements besides drug testing.

¶ 10        Ashley Luse also testified on behalf of the State. Luse had been respondent's caseworker since April 2022. Luse further corroborated Wilder's testimony.

¶ 11        Respondent presented no evidence.

¶ 12       The trial court found respondent had completed most of her court-ordered requirements, but it noted respondent's methamphetamine use was a "thousand-pound gorilla in the room." The court concluded respondent had not made reasonable efforts to correct the underlying condition that caused the minor to be removed from her care.

¶ 13                          B. Best-Interest Hearing

¶ 14       The trial court conducted a best-interest hearing on July 8, 2024. A best interest report, status report, and permanency review report were admitted into evidence without objection. Angela W., the minor's foster mother, testified on behalf of the State. Angela had been the minor's foster mother since 2018. When the minor first came under her care, he would "run," which necessitated constant supervision, lacked social skills, and was nonverbal. The minor improved and has become "very verbal" and "very energetic." The minor was enrolled in a private school specializing in developmental disabilities.

¶ 15       Angela stated she had bonded with the minor, and he called her "mom." The minor had also bonded with her fiancé, her stepson, and their two newest foster children, who also lived in the home. The minor participated in equine therapy for coping skills. If given the opportunity, Angela stated she would adopt the minor.

¶ 16       Respondent testified she had stable housing in Galesburg, Illinois, where she lived alone. She had engaged in mental health treatment for the past 12 months. The GAL objected based on relevance and argued mental health treatment was a matter for the fitness hearing. Respondent contended the mental health treatment would show she was capable of caring for the minor. The trial court sustained the objection.

¶ 17       Respondent said she was employed with Casey's in Galesburg. She disputed Angela's testimony that the minor was nonverbal at the time he was taken from her custody. She

said she spent two years attempting to get the minor into Easter Seals for treatment because Angela had not completed the required paperwork. She believed it was in the minor's best interest for him to be placed with her.

¶ 18   The trial court noted the minor had special needs, which would have adverse consequences were his circumstances and routine disrupted. The court noted the minor's current placement offered a support system with a routine and he was provided with "excellent" care. The court terminated respondent's parental rights.

¶ 19   This appeal followed.

¶ 20                    II. ANALYSIS

¶ 21   Before addressing respondent's claims, we note respondent's brief is single-spaced. Illinois Supreme Court Rule 341 (Oct. 1, 2020) sets forth the rules governing the contents and requirements of an appellant's brief, and Rule 341(a) requires the body of the brief's text to be double-spaced. Ill. S. Ct. R. 341(a) (eff. Oct. 1, 2020). Compliance with Rule 341 is not a mere suggestion, and it is within this court's discretion to strike an appellant's brief for failing to comply. *Niewold v. Fry*, 306 Ill. App. 3d 735, 747 (1999). However, we note this matter is subject to an expedited disposition under Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018). Therefore, in the interest of a timely resolution of this matter, we admonish counsel for failing to comply with Rule 341. See *People v. Glasper*, 234 Ill. 2d 173, 189 (2009) (stating supreme court rules carry "the force of law, and they should be followed"); see also *Gaston v. City of Danville*, 393 Ill. App. 3d 591, 601 (2009) (noting violations of supreme court rules that do not "hinder or preclude our review" need not be stricken in whole or in part).

¶ 22   On appeal, respondent argues the trial court erred when it sustained the GAL's objection to her testimony about her mental health treatment after the relevant nine-month period

alleged in the State's petition. Respondent contends she should have been permitted to present evidence of her progress for the court to determine what was in the minor's best interest. In support, she cites, without analysis, *In re Latifah P.*, 307 Ill. App. 3d 558 (1999) (vacated under the supreme court's supervisory authority), and *In re Adoption of D.A.*, 222 Ill. App. 3d 73 (1991). Respondent does not challenge the court's finding of unfitness; therefore, we confine our review to the best interest hearing.

¶ 23     The State contends respondent forfeited her argument on appeal because she failed to provide the trial court with an offer of proof regarding the excluded testimony. Furthermore, respondent failed to show the court's best interest finding was against the manifest weight of the evidence.

¶ 24     "The purpose of an offer of proof is to disclose the nature of the evidence offered to the trial judge and opposing counsel and to the reviewing court so that it may determine whether the exclusion of evidence was erroneous." *In re Tasha L.-I.*, 383 Ill. App. 3d 45, 54 (2008). "To preserve an error in the exclusion of evidence, the proponent of the evidence must make an adequate offer of proof in the trial court." *Northern Trust Co. v. Burandt & Arbrust, LLP*, 403 Ill. App. 3d 260, 280. The "[f]ailure to make an adequate offer of proof results in forfeiture of the issue on appeal." *Id.*

¶ 25     We agree with the State respondent failed to make an offer of proof; however, we find she has not forfeited her argument on appeal. "[A]n offer of proof is not required if it is apparent that the trial judge understood the nature of the objection and the character of the evidence sought to be introduced or if the questions themselves and the circumstances surrounding them show[ed] the purpose and materiality of the evidence." (Internal quotation marks omitted.) *Schmitz v. Binette*, 368 Ill. App. 3d 447, 454 (2006). It is clear from the record respondent was attempting

to introduce testimony showing her progress with mental health treatment to provide the trial court with an alternative option for the minor's placement. Respondent points to the court's exclusion of her testimony related to mental health treatment only to argue the court's best interest determination was against the manifest weight of the evidence.

¶ 26         After a trial court finds a parent is unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). The trial court's best interest determination will not be reversed unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. "A best-interest determination is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result." *Id.*

¶ 27         At the best interest hearing, the State must prove by a preponderance of the evidence termination of parental rights is in the child's best interest. See *D.T.*, 212 Ill. 2d at 367. The trial court must consider the factors set forth in section 1-3(4.05) of the Act. (705 ILCS 405/1-3(4.05) (West 2022)). However, the court is not required to make a specific reference to each factor in its findings. *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. These statutory factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and

child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

¶ 28 In this case, the evidence demonstrated the minor's needs were being met by his current foster placement. He had developed a bond with his foster mother over the past six years, whom he called "mom." She was willing to adopt him, and placement with her was the least disruptive and accounted for the uniqueness of D.P.'s circumstances as a child with a developmental disability. *Pace* respondent's progress with stable housing and, presumably, mental health treatment, nothing in respondent's evidence suggested anything different in her circumstances from the fitness hearing, wherein the State's evidence showed she had stable housing, employment, and successfully completed mental health treatment.

¶ 29 At the best interest stage, "the focus shifts to the child." *D.T.*, 212 Ill. 2d at 364.

"The issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated. Accordingly, at a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." (Emphases in original.) *Id.*

Here, this is precisely what the trial court concluded: the minor's special needs were being thoroughly met. We simply cannot say the facts of this case—including the assumption respondent's mental health treatment had been successful—demonstrate the court should have

reached the opposite conclusion. Therefore, we conclude the court's best interest determination was not against the manifest weight of the evidence.

¶ 30                                    III. CONCLUSION

¶ 31        For the reasons stated, we affirm the trial court's judgment.

¶ 32        Affirmed.